CAMPBELL, APPELLANT, *v.* FLANNERY ET AL., RESPOND-
ENTS.

(No. 2,026.)

(Submitted December 14, 1904. Decided February 23, 1905.)'

*Waters and Watercourses — Injunction — Easement—Estop-
pel—Representations of Codefendant—Pleadings.*

Public Lands—Entry—Ditches—Easement.
  1. Where lands have been withdrawn from the public domain by
  entry, and a ditch and its uses were a burden thereon by grant from
  the government at the time of the entry, such burden cannot be added
  to in favor of a third person under Act of Congress of July 26, 1866
  (14 Stat. 251, chapter 262), giving citizens the privilege of running
  a ditch over unoccupied government lands.
Easement—Parties to Action.
  2. An easement claimed on lands in possession of defendants cannot
  be adjudged in a suit to which the owner is not a party.
Water Rights—Pleadings—Agents—Unauthorized Representations—Es-
  toppel.
  3. Where, in a suit to restrain interference with the flow of flood
  waters in certain ditches, it is not alleged that a codefendant, who
  *professed* to be authorized to sell the land, was the agent of the owner
  or empowered to make any representations for him, and the other
  defendants are not connected with his statements, they are not es-
  topped to deny plaintiff's right to transmit waters through the ditches
  by representations of such codefendant, made before plaintiff's pur-
  chase, that the waters were carried through the ditches.

*Res Judicata*—Pleadings—Evidence—Findings.
    4. Where plaintiff's equities have been presented under his complaint and in his evidence, and the defendant has failed to introduce any evidence, the trial court's finding that under the evidence plaintiff had not established his case, or had any equities, is *res judicata,* if the court's holding was correct.
Injunction—Pleadings—Tenants in Common—Waste.
    5. (On motion for rehearing.)  Where, in a suit to restrain interference with certain ditches, the complaint does not allege that defendants are tenants in common with plaintiff, but its theory is that defendants neither have nor claim any interest in the premises, defendants cannot be enjoined from cutting or damming the ditches on the theory that they are tenants in common, and, as such, cannot lawfully commit waste.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

SUIT by N. S. Campbell against William and Ida B. Flannery. From a judgment granting a motion for nonsuit, plaintiff appeals. Affirmed.

*Messrs. McConnell & McConnell, and Mr. John A. Luce,* for Appellant.

The respondents, being tenants in common with the appellant, cannot commit waste upon a ditch in which they are such tenants in common, and an injunction will lie to prevent it, both upon the ground of preventing repeated trespasses on the part of the respondents and on the ground of insolvency.

The common-law rule upon this subject is stated in 11 Encyclopedia of Pleading and Practice, page 769, as follows: "The common-law rule, as hereinbefore shown, not permitting one joint tenant or tenant in common to have an action *ex contractu* against his companion unless as bailiff, his only remedy was by bill in equity; but the change in the rule, giving an action, did not abridge the remedy in equity in proper cases, and where a case is presented involving a variety of adjustments, limitations, cross-claims or other complications, a court of equity will afford the parties superior facilities for effecting distributive justice between them, as well as in other cases where the relief sought is peculiar to a court of equity." (Referring to the following cases: *Hamilton* v. *Comine,* 28 Md. 635, 92 Am. Dec. 724; *Dyckman* v. *Valiente,* 42 N. Y. 549;

*Early* v. *Friend,* 16 Gratt. 41; *Smith* v. *King,* 50 Ga. 192; Freeman on Cotenancy, 2d ed., sec. 394; *Carter* v. *Bailey,* 64 Me. 465, 18 Am. Rep. 273; *Blood* v. *Blood,* 110 Mass. 545; *Bliss* v. *Rice,* 17 Pick. 23; *Stout* v. *Curry,* 110 Ind. 515, 11 N. E. 487; *Twort* v. *Twort,* 16 Ves. Jr. 128; *Obert* v. *Obert,* 5 N. J. Eq. 408; *Hawley* v. *Clowe,* 2 Johns. Ch. 122; *Kennedy* v. *Scovil,* 12 Conn. 317; *Valloue* v. *Wood,* 8 Cush. 48.)

Malicious waste may be sufficient ground for injunction, but not purely equitable waste. (*Hole* v. *Thomas,* 7 Ves. Jr. 589.) The court will grant an injunction only where the waste complained of is malicious or destructive or attended with peculiar circumstances warranting such relief. (17 Ency. of Law, 2d series, p. 705, note 7.) The case at bar is one in which both malicious conduct and insolvency appear.

But we do not have to rely upon the common law, or the general principles governing courts of equity, but the statute, sections 586 and 592 of the Code of Civil Procedure, unmistakably give us the right to maintain this suit. (*Anaconda Copper Min. Co.* v. *Butte & Boston Min. Co.,* 17 Mont. 519, 43 Pac. 924.) This case was approved in the case of *Red Mountain Min. Co.* v. *Essler,* 18 Mont. 174, 44 Pac. 523, *Connole* v. *B. & M. Co.,* 20 Mont. 524, 52 Pac. 263, and *Harrigan* v. *Lynch,* 21 Mont. 36, 52 Pac. 642. The respondents are estopped to deny the appellant's right to transmit these flood waters through the Flannery ditch and the Penwell ditch to the Gallatin river. "If, whatever a man's real intention may be, he so conducts himself that a reasonable man would take the act or representation to be true, and believe that it was meant that he should act upon it, and he did act upon it as true, the party making the representation will be precluded from contesting its truth." (11 Am. & Eng. Ency. of Law, p. 431, and cases cited in note 1.)

Actual intention to mislead is not necessary to work estoppel. (11 Am. & Eng. Ency. of Law, p. 431, and authorities in note 2.) Estoppel may arise by acquiescence and by conduct where there is no intention to deceive and without any actual culpability. (*Radford* v. *Gaskill,* 20 Mont. 293, 50 Pac. 854; *Mor-*

*rison* v. *Clark,* 24 Mont. 516, 63 Pac. 98.) Where parties have agreed upon a boundary line, or a fence has been built upon a line, and property has been transferred with reference to the conditions existing at that time, the parties are estopped from controverting such boundary line. (*Magee* v. *Stone,* 9 Cal. 600; *Sneede* v. *Osborne,* 25 Cal. 619; *Columbet* v. *Pacheco,* 48 Cal. 395; *McCormick* v. *Barnum,* 10 Wend: 105-. 109; *Perkins* v. *Gray,* 3 Serg. & R. 132; *Hagey* v. *Detweiler,* 35 Pa. St. 412; *Rockwell* v. *Adams,* 6 Wend. 467; *Rockwell* v. *Adams,* 7 Cow. 761; *Jackson* v. *McConnell,* 12 Wend. 421.) See further regarding estoppel by conduct: *Brown* v. *Baruch,* 24 Wash. 572, 64 Pac. 789, opinion, 790; *Territory* v. *Cooper,* 11 Okla. 699, 69 Pac. 813, opinion, 816; *Pacific Improvement Co.* v. *Carriger* (Cal.), 68 Pac. 315-318; *Lux* v. *Haggin,* 69 Cal. 255, 10 Pac. 674. It is certainly not necessary that there should be any other parties to this suit to enable us to maintain it upon the ground of estoppel.

The Act of Congress of July 26, 1866, section 9, operates both retrospectively upon existing rights and prospectively upon such rights as might be acquired in the future. The Act in effect grants the right to construct such ditches where it was allowed by local customs, regulations or decisions of the courts. It was not necessary that there should be both local customs and decisions of the courts. Either one was all that was necessary. So long as lands remained public domain and there existed local customs and decisions of the courts allowing ditches to be constructed thereupon the settler could not prevent their construction, but was remitted to his remedy of an action for damages inflicted upon his possessory rights by the construction of such ditches. (*Hobart* v. *Ford,* 6 Nev. 77; *Jennison* v. *Kirk,* 98 U. S. 453; *Broder* v. *Water Co.,* 101 U. S. 276; *Basey* v. *Gallagher,* 20 Wall. 683; *Jacob* v. *Lorenz,* 98 Cal. 335.)

*Mr. Eugene B. Hoffman,* and *Mr. T. J. Walsh,* for Respondents.

Having in mind the elements of an estoppel as stated in *Brigham Young Trust Co.* v. *Wagener,* 12 Utah, 1, 40 Pac.

764, the complaint is insufficient as the foundation of any right in the plaintiff on that ground. It does not aver that appellant was ignorant of any fact concerning which Flannery made any representation, nor does it aver that he had no convenient means of obtaining information, nor does it aver that any representations made by Flannery were made with the intent that the appellant should act on the same. (*Wythe* v. *Salem*, 4 Saw. 88, Fed. Cas. No. 18,121; 8 Ency. of Pl. & Pr. 10; *Meyendorf* v. *Frohner*, 3 Mont. 282; *Fabian* v. *Collins*, 3 Mont. 215; *Attkisson* v. *Plumb*, 50 W. Va. 104, 40 S. E. 587, 58 L. R. A. 788; *Biddle Boggs* v. *Merced*, 14 Cal. 279.)

"Matters pleaded by way of equitable estoppel must be of such a character and sufficient, as pleaded, to make a cause of action for deceit." (*Brigham* v. *Wagener*, 12 Utah, 1, 40 Pac. 764.) The representation which is made the basis of an estoppel must be of some material fact. (*Meyendorf* v. *Frohner*, ·supra; Bigelow on Estoppel, 1st ed., 480.)

This is an attempt to establish an interest in an easement over the lands of Toohey, now occupied by respondents, by parol, notwithstanding the provisions of the statute of frauds. The rule is universal that in such cases the facts must be established by evidence of the most satisfactory character. Such is the rule in cases of attempts to enforce specific performance of oral contracts for the sale of land. (*Purcell* v. *Miner*, 4 Wall. 513.) In cases where a trust in lands is sought to be established by parol. (*Howland* v. *Blake*, 97 U. S. 624.) And in cases of estoppel *in pais* affecting the title to real estate. (*Corning* v. *Troy*, 39 Barb. 311, 323, 324; *Rust* v. *Bennett*, 39 Mich. 521.) In fact, it is quite generally held that in such cases a fraudulent intent on the part of the party charged to have made the representations is necessary. (*Biddle Boggs* v. *Merced*, 14 Cal. 279.) 2 Pomeroy's Equity, 805, 807, page 1121, calls attention to the distinction between estoppel as affecting the title to real estate and as arising in other situations not complicated by the provisions of the statute of frauds. (*Brant* v. *Virginia*, 93 U. S. 326.)

No decree can be made in this case saving the rights of Toohey. Every day that this water runs down over his land

brings nearer the time when a right by prescription can be asserted against him by Campbell. He is an indispensable party to this action. (1 Beach's Modern Equity Practice, 58, 59; *Gregory* v. *Stetson,* 133 U. S. 579; *Shields* v. *Barrow,* 17 How. 130-141; *Woodward* v. *McConnaughey,* 106 Fed. 758; Hawes on Parties, 26; Pomeroy's Code Remedies, 4th ed., 228.)

It appears to be contended that by some sort of construction which it is claimed should be given to the Act of Congress of July 26, 1866, one can invade the claim of a homesteader at any time before patent is issued to him and cut a ditch through his front yard, or his garden, or his potato patch. The counsel says that "the only remedy which the settler had as against the construction of such ditches was an action for damages." This argument was made to and refuted by the supreme court of California. (*McGuire* v. *Brown,* 106 Cal. 671, 39 Pac. 1060.) A settler on the public domain is as secure in his possession against intrusion as an owner in fee. (Long on Irrigation, 66.)

MR. JUSTICE MILBURN delivered the opinion of the court.

This is a suit for an injunction to prevent the defendants from cutting the levees of, or damming up, or in any other manner interfering with a certain ditch, for thus, it is alleged, certain waters are prevented from flowing therein, thereby causing the overflowing and flooding of plaintiff's land; and, further, that there may issue a mandatory injunction commanding the defendants to remove certain obstructions from the ditch, else to cut a gate in the same, in order to allow the free and unobstructed flow of the water into another ditch. In other words, the plaintiff desires to have the defendants restrained from turning certain flood waters out upon his land.

It is alleged in the complaint, and appears to be the fact, that the plaintiff, since the fall of 1897, has been the owner of and in possession of a tract of two hundred acres of land; that the defendants at the time of the filing of the complaint, and at certain times thereinbefore mentioned, have been in the posses-

sion of a certain tract of about one hundred and sixty acres of land, adjoining plaintiff's land; that from a certain point in the East Gallatin river south of the lands, a ditch called the "Flannery Ditch" runs in a northerly direction to the bed of Cottonwood creek, thence in the creek-bed, thence westerly. The bed of the creek is used as a ditch to a point close to the southeast corner of the tract, which embraces all the lands mentioned. The creek-bed from that point runs in a diagonal course, leaving the said tract of land near the northwest corner thereof, almost all of the creek-bed in the said tract being upon the lands of the plaintiff. The said ditch, after leaving the Cottonwood creek, turns to the left, and joins a ditch called the "Penwell Ditch" at a point on the lands occupied by the defendants, the Penwell ditch then running on the latter's land in a northerly direction. The plaintiff alleges that the defendants cut the levee of the said Flannery ditch, and turned the waters out of the same so that they ran down to the old creek-bed, where they had not flowed "since the early eighties"; that the plaintiff rebuilt the said levee, and that then the defendants put a dam across the ditch where it is taken out of the creek-bed, and turned the whole volume of water back into the creek-bed where it would flow across the plaintiff's premises, to his great injury; that the plaintiff immediately tore the dam out, and allowed the water to continue in its course down the ditch; and that the defendants threaten to put the dam in again. The defendants admit that they did as alleged, and say that they intend to do it again. Hence this suit.

The defendant William Flannery years ago owned the land now belonging to the plaintiff, but by several transfers it became the property in fee of the plaintiff. It appears that the creek is dry a greater portion of the year, and only carries water in the spring and the early summer; and that the artificial ditch running from the creek was constructed long before the plaintiff purchased the land, which he bought in 1897.

It becomes necessary to consider that the plaintiff alleges in his complaint that prior to his purchase of his (plaintiff's) land the defendant William Flannery went with him, and showed him the lands bought by plaintiff, and "proposed to

sell the same to him, and also to sell a tract of land upon which he now lives, and through which the said Cottonwood creek also passed, and represented to plaintiff that the channel had been changed to the Flannery and Penwell ditches, and the same was used to carry off the surplus water of Cottonwood creek, and plaintiff was induced to purchase said lands by such representations; and at the time the defendant so showed the plaintiff these lands and this channel the same had been plowed and cultivated and were not used, and had not been used, as plaintiff is informed and believes, for a number of years, as the channel of said Cottonwood creek; and the purchase of said lands by plaintiff was made with reference to its condition at that time as pointed out by said William Flannery; said William Flannery at said time *professed* [italics ours] to be authorized to sell the same; that the channel of said creek on plaintiff's lands had been practically reclaimed and cultivated, and improvements had been made upon it, before plaintiff's purchase of the land, by the defendant William Flannery, and the improvements which plaintiff had put upon the creek-bed since he became the owner were made with the knowledge and acquiescence of the defendants; and that he was led to purchase the lands by the conduct aforesaid of William Flannery."

It is alleged and admitted that the plaintiff is the owner of an undivided interest in, and is a tenant in common of, the Flannery ditch from the point of its connection with the East Gallatin river to its terminus in the Penwell ditch, with one Pat Toohey, Benjamin Graham and Joseph Davis, except that the defendants deny that the plaintiff has any interest in the ditch beyond the point where the same departs on the west from plaintiff's land. Defendants admit that plaintiff has a right to the use of the water which he has appropriated from the East Gallatin river upon his premises, bringing it through said ditch. The land occupied by the defendants upon which the ditch runs after leaving the bed of the Cottonwood creek does not belong to the defendants, or either of them, and is merely in their possession under a lease and contract to buy.

The cause was tried before the court without a jury, it having been expressly waived by the parties. After the evidence

for the plaintiff was all in, the defendants interposed what was called "a motion for nonsuit," which was granted. The error assigned is that the court erred in sustaining this motion and in entering judgment for the defendants.

After a short statement of the case, the appellant in his brief submits what is denominated "Argument," it being, in our opinion, a statement of facts merely, being a consideration of the evidence tending to show that certain conclusions of the appellant as to what the findings of fact should have been are well founded. Next comes the "Legal Argument," (1) the first legal proposition being that the respondents, as tenants in common with the appellant, may not commit waste on the ditch in which they are such tenants in common, and that an injunction will lie to prevent it, both upon the ground of preventing repeated trespasses on the part of respondents and on the ground of insolvency. (2) The next point is that respondents are estopped to deny the appellant's right to transmit these flood waters through the Flannery ditch and the Penwell ditch to the East Gallatin river. (3) Then follows an argument seemingly in support of the proposition that William Flannery is the equitable owner of the lands over which runs the ditch after leaving the Campbell lands, the land having been patented by the United States to his mother, Catherine Flannery; the idea of counsel being that she was his representative in getting title from the United States, he having abandoned his attempt to take it up under the timber culture Act, and she taking it as a homestead. From certain other facts in the case counsel endeavors to establish his contention that Mr. Flannery is, and always has been, the owner of the Toohey land. This point we need not give any attention to in the consideration of a suit of this character. (4) The further point is made that at the time that defendant Flannery owned the plaintiff's land, and long before the acquisition thereof by the latter person, he (Flannery) owned an easement on the lands now in his possession, to wit, Toohey's lands, and that that easement is a servitude on the Toohey land, and runs to Campbell by mesne conveyances. Counsel further assumes that at the time of the passage of the Act of Congress of July 26, 1866 (14 Stat. 251, c.

262), granting the right to settlers to run and maintain ditches upon public lands, the lands now occupied by respondents were still public lands, and had become burdened by the running of the ditch over them, and that therefore those who obtained title thereto and their grantees held the land subject to such burden or servitude, the Penwell ditch having been constructed in 1864, at which time there was not any settler upon the lands so now in possession of the respondents.

There is some testimony in the case, and there are certain allegations in the complaint, which seem to have been introduced and set up for the purpose of establishing an easement upon the lands occupied by the respondents by prescription, but counsel states that he does not rely upon prescription.

The plaintiff claims that he has an easement on what is called the Toohey lands, the burden upon the land being his right to have the flood waters of Cottonwood creek carried through the Flannery and Penwell ditches, rather than have them go over his land. An easement is obtained either by prescription or grant. In this case appellant expressly declares in his brief that he does not rely upon prescription. It seems that the grant upon which he relies is an implied grant in the Act of Congress of July, 1866, giving citizens the privilege of running a ditch over unoccupied government lands. The Penwell ditch was first located in 1864. The part of the Flannery ditch running from the creek to the Penwell ditch for the purpose of carrying off the flood waters seems to have been made and connected with the latter ditch in 1890. If the burden of carrying these flood waters came to be at any time a servitude upon the Toohey lands, it certainly could have been not earlier than 1890; but Catherine Flannery, the mother of the defendant William, had the possession of these Toohey lands transferred to her by William in 1885, at which time she undertook to initiate a homestead right under which she received a patent in 1891. The government could not grant to Campbell, the plaintiff, an easement upon the lands entered by Catherine Flannery and withdrawn from the public domain. This is enough to say to dispose of the idea of a grant from the United States to Campbell of any easement upon the Toohey lands. If the

Penwell ditch and its uses were a burden upon the land by grant of the United States at the time Mrs. Flannery entered the same, such burden could not be added to as against her in favor of Campbell or anybody else by the United States under the Act referred to, after the lands were withdrawn by her entry.

It appears from the evidence that one Toohey owns the Toohey lands, in possession of defendants, upon which plaintiff claims an easement; that is, the right to have the flood waters run over the said lands in the Flannery ditch. As to find for the plaintiff it would be necessary for the court to conclude that there was such a burden upon the said lands, it is apparent that such an easement may not be adjudged in a suit to which Toohey is not a party.

The main point in this case to be considered, and the one upon which respondent seems principally to rely, is the question whether or not the defendants are estopped by the conduct of the defendant William Flannery in going with the plaintiff upon the land just before the purchase in 1897, and showing him the same, and telling him that the flood waters formerly going down the creek no longer ran over the land, but were carried around through the ditches. We cannot understand how the defendants or either of them is estopped. There is nothing in the complaint in any wise connecting Ida B. Flannery, one of the defendants, with the acts or statements of William. There is not any allegation in the pleading that William was the agent of the owner of the land, or authorized to represent him, or to make any representations for him. The statement simply is that he *professed* to be authorized to sell the land. There is not even a statement that he did sell it, or had anything to do with selling it. The evidence in fact shows that the plaintiff got the land from somebody else, who acted as agent. We cannot understand how, if a stranger to the owner of the land makes false representations to a person who buys the land in a subsequent transaction with a party not connected with the one making such representations, the person so making false statements at one time can be estopped in another matter, such as the case at bar, at another time, any more than if

a stranger to the selling of a horse, having no interest in the transaction, should, without the knowledge of the owner, falsely represent the qualities thereof to the would-be purchaser, who bought the animal on the strength of those representations, such owner of the horse could be held liable, and estopped to deny the statements of the officious person, in case the animal turned out to be worthless.

Furthermore, the evidence of the plaintiff shows that at the time Flannery made these representations, if he did make them, the creek-bed on the land bought by the plaintiff had been cultivated, had stubble upon it, had willows growing upon it, and the dam which prevented the waters running down upon the land had a clump of large willows upon it eight or ten feet high; all of these circumstances showing conclusively, according to plaintiff's testimony, that the water had not gone down the creek-bed for a great while, and that the creek-bed had not been a watercourse over the land which he bought for a long time.

The motion of respondents is not strictly a motion for nonsuit, but a motion for judgment for the defendants. The alleged equities of the plaintiff's case having been presented in the evidence and under his complaint, and no evidence having been introduced by the defendants, it was the duty of the court to determine whether or not plaintiff had established his case, or had any equities. The court found that under the evidence he had not, and under the law as laid down in *Sanford* v. *Gates,* 21 Mont. 277, 53 Pac. 749 (see, also, cases cited in Am. & Eng. Ency. of Law, 2d ed., pp. 801-803), this case is *res judicata,* if the holding of the court was correct, as we think it was.

We do not find that the court erred in its ruling on the motion of defendants complained of, and the judgment is therefore affirmed.

*Affirmed.*

Mr. CHIEF JUSTICE BRANTLY concurs.

Mr. JUSTICE HOLLOWAY, being disqualified, did not hear the argument, and takes no part in the foregoing decision.

ON MOTION FOR REHEARING.

(Submitted March 21, 1905. Decided March 31, 1905.)

MR. JUSTICE MILBURN delivered the opinion of the court.

A motion for rehearing has been made and submitted in this case. Appellant adverts to the fact that the point by him made, to wit, "that the respondents, as tenants in common of the ditch, may not commit waste on the ditch in which they are such tenants in common," was not discussed by us. It was not necessary to consider the point. The reference is to the Flannery ditch. The complaint does not allege that the respondents are tenants in common in the Flannery ditch with the plaintiff or with anyone. Although the prayer of the complaint is to have respondents restrained from damming or cutting the ditch, the object of the suit, as disclosed by the pleadings, is to prevent injury to the lands of the plaintiff, in which defendant respondents have not, and do not claim, any interest whatever. They could not commit *waste* on the plaintiff's land in which they do not claim any interest as occupants or otherwise. They, as tenants in common, cannot be enjoined from cutting or damming the ditch, for the reason that there is a want of sufficient allegations as to such tenancy, and, further, for the reasons stated in the original opinion.

*Motion denied.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY, being disqualified, takes no part herein.